# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CYNTHIA K.,[1]

        Plaintiff,

v.

ANDREW M. SAUL,[2]
**Commissioner of Social Security,**

        Defendant.

CIVIL ACTION

No. 18-2590-JWL

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I. Background**

This is the second time this case has been before this court. (R. 561-70). After the court's remand on October 6, 2014 (R. 561-70), an ALJ issued another decision on August 12, 2015, Plaintiff filed exceptions with the Appeals Council, the Council assumed jurisdiction, found errors and remanded to the ALJ with instructions. (R. 614-16). After that remand, the ALJ conducted further proceedings and issued a decision dated February 6, 2017. (R. 451-66). Plaintiff disagreed with the ALJ's decision and sent a letter brief to the Appeals Council along with a statement from Plaintiff's former employer, seeking reversal of the decision. (R. 767-76). The Appeals Council received the letter brief and the statement and made them a part of the administrative record, but declined to assume jurisdiction, thereby rendering the ALJ's decision the final decision of the Commissioner. (R. 440-46). Plaintiff claims the ALJ erred both in weighing the medical opinion of Dr. Sharpe who treated her for her rotator cuff injury and in finding that she can do past relevant work (PRW) as a cashier II. (Pl. Br. 5-6).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight of the evidence. It requires more than a scintilla, but less than a

preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she

has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her PRW; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of PRW. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). This case was decided at step four of the process, and the burden remained always on Plaintiff.

## II. Dr. Sharpe's Opinion

Plaintiff argues the ALJ "provided a new rationale that was not included in his previous decision" when discounting Dr. Sharpe's opinion—that Dr. Sharpe's opinion did not specify objective testing supporting his limitations. (Pl. Br. 15). She argues that Dr. Sharpe relied on an MRI showing a full-thickness rotator cuff tear which, when doing

4

an arthroscopy proved to be irreparable, and this MRI and procedure is objective testing supporting his limitations. (Pl. Br. 15). She argues it was error to suggest Dr. Sharpe's treatment notes did not reflect the restrictive activities he opined because Dr. Sharpe's positive comments about Plaintiff's recovery or abilities "were always accompanied by additional statements that indicated how well she was doing in light of her irreparable right rotator cuff and the significant internal derangement of her right shoulder." Id. Plaintiff questions the ALJ's comment that Plaintiff requested a note from Dr. Sharpe stating her rotator cuff was irreparable and argues that a treating source opinion is worthy of deference but "the ALJ did not identify any other substantial evidence that contradicts or conflicts with Dr. Sharpe's opinion." Id. at 15-16.

The Commissioner does not concede that Dr. Sharpe's opinion is worthy of controlling weight but argues that even if it were, the outcome would be the same in the decision at issue and reversal would not be warranted. (Comm'r Br. 5). This is so in the Commissioner's view because "Dr. Sharpe opined that Plaintiff was unable to perform any overhead reaching with her right arm and was limited to lifting and carrying no more than 10 pounds using her right arm," but the ALJ assessed a limitation of no overhead reaching with the right arm and an ability to occasionally lift and carry up to 20 pounds. Id. at 5-6. He acknowledges that it is arguable, therefore, that Dr. Sharpe limited Plaintiff to lifting and carrying 10 pounds whereas the ALJ allowed her to lift and carry 20 pounds, but he argues that the vocational expert (VE) testified that even an individual who could lift and carry no more than 10 pounds either frequently or occasionally would still be able to perform the cashier II job as generally performed in the economy.

5

(Comm'r Br. 6) (citing R. 499-500). He argues that consequently even if the ALJ completely accepted Dr. Sharpe's limitations, he still would have found Plaintiff able to perform her past work as generally performed, as the ALJ noted in his decision. Id. at 7 (quoting R. 465). Plaintiff does not respond to the Commissioner's argument in this regard in her Reply Brief.

The court agrees with the Commissioner's argument, but goes a little further. Dr. Sharpe's only opinion to which Plaintiff appeals was his opinion dated October 15, 2015 in which he stated that since November 30, 2010 Plaintiff "is unable to perform any overhead reaching <u>with her right arm</u> and she [is] limited to lifting and carrying no more than ten pounds <u>using her right arm</u>." (R. 1308) (emphases added) (cited in Pl. Br. at 14). The ALJ assessed Plaintiff with

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following restrictions: The claimant is able to occasionally lift 20 pounds, frequently lift or carry ten pounds, sit for up to six hours, and stand or walk for approximately six hours in an 8 hour day with normal breaks. She is able to occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; never crawl; and occasionally stoop, kneel and crouch. She is restricted from overhead reaching with the dominant right upper extremity. She is able to perform occasional reaching with the dominant right upper extremity in front, or laterally. She is occasionally able to push and pull with the dominant right upper extremity. She is able to tolerate occasional exposure to extreme cold, vibration, unprotected moving mechanical parts and unprotected heights.

(R. 459) (finding no. 5) (bolding omitted).

The RFC assessed by the ALJ is entirely consistent with Dr. Sharpe's opinion. The ALJ found Plaintiff unable to perform overhead reaching with her right arm as did Dr. Sharpe. Dr. Sharpe provided no limitation on reaching to the front or laterally with

6

her right arm whereas the ALJ found she is limited in such reaching to only occasionally. Dr. Sharpe limited Plaintiff to lifting only 10 pounds with her right arm but did not limit Plaintiff's lifting with her left arm, whereas the ALJ limited her lifting to only 20 pounds. While the ALJ did not specify that Plaintiff is limited to lifting only 10 pounds with her right arm, Plaintiff does not argue that there is anything which would preclude her from lifting 20 pounds with her left, non-dominant arm, or sharing her lifting with both arms while exerting only 10 pounds of force with her right arm. If the ALJ committed error in this respect, it was harmless. Moreover, as the Commissioner argues, the VE testified that Plaintiff's past work as a cashier II as generally performed is routinely consistent with a limitation to lifting only ten pounds. (R. 499-500).

### III. Past Relevant Work as a Cashier II

Plaintiff claims her past work at Don Chilito's was a "composite job," having significant elements of two occupations (kitchen helper and cashier II) and has no counterpart in the Dictionary of Occupational Titles (DOT). (Pl. Br. 16-17). She argues based on the Commissioner's Program Operations Manual System (POMS) (DI 25005.020) that an ALJ may find an individual can perform a composite job as she performed it only if she can perform all parts of the job. Id. at 17. She argues that her past work was a composite job, that the ALJ did not find that she can perform all parts of the job, and that it was, therefore, error to conclude that she could perform her PRW.

The Commissioner argues that the ALJ reasonably found Plaintiff had PRW as a cashier II. He argues, "The ALJ considered but reasonably rejected Plaintiff's eleventh-hour assertion that her job at Don Chilito's was a composite job involving much more

7

strenuous duties than what she had previously reported on multiple occasions." (Comm'r Br. 8) (citing R. 465). He argues that "[a] composite job is '[w]ork that required significant elements of two or more occupations,'" id. (citing POMS DI 25001.001(A)(10)), and that "[p]ast relevant work 'may be a composite job if it takes multiple DOT occupations to locate the main duties' that the claimant performed." Id. at 9 (citing POMS DI 25005.020(B)). He argues that substantial record evidence "supports the ALJ's finding that Plaintiff's work at Don Chilito's was as a cashier II and was not a composite job." Id.

The Commissioner argues that it was Plaintiff's burden to inform the agency of her duties in her PRW, and the information she provided the agency in 2010, 2012, and 2014 does not contain information suggesting other than that her work at Don Chilito's was work as a cashier II, and that while she "may have changed her description of her work in 2016, this in no way negates the bulk of the evidence that was already before the ALJ and which showed her work at Don Chilito's was a cashier II job." Id. at 11. Moreover, he argues that the main duties of Plaintiff's work at Don Chilito's do not require multiple DOT occupations to locate. Id.

In her Reply Brief Plaintiff reiterates that her job at Don Chilito's was a composite job, that she cannot perform all parts of the job, and that as a consequence it was error to find that she could perform her PRW as it is generally performed.

As the parties agree, the ALJ found that through her date last insured Plaintiff was able to perform her PRW as a cashier II. (R. 464). And, he discussed and dismissed Plaintiff's hearing testimony that her past work at Don Chilito's was a composite job:

8

> At the hearing, the claimant testified that she did significant other duties as a cashier, including filling ice bins; lifting five-gallon buckets of ice to waist level; bringing up stacks of glasses; filling a cooler with liquor if needed; tearing down her station and [sic] the end of her shift, as well as the salad bar area; busing tables occasionally; and sweeping and mopping her area, as well as a carry-out area (Hearing Testimony). However, the undersigned has given this testimony little weight as it pertains to her employment history.
>
> First, the testimony is inconsistent with her prior statements. In her initial Work History Report dated December 30, 2010, the claimant described her cashier job (at Don Chilito's) as standing and running a cash register, getting margaritas for customers, and keeping napkins and silverware full. She lifted 20 pounds frequently (Ex. 3E). In her March 22, 2012 Development Questionnaire, the claimant listed her duties as including cashiering, serving drinks, and refilling napkins and silverware (Ex. 1 lE). Later, in the April 21, 2014 Work History Report, she specified that her duties included cleaning the sneeze guard, filling cups, getting napkins and silverware, set up cooking line and filled plates (Ex. 17E). As opposed to her hearing testimony, the claimant did not mention more strenuous activities, such as lifting ice buckets to waist level, "'tearing down" entire stations or bringing up stacks of glasses (Hearing Testimony). Using these earlier statements, there is no evidence that the claimant did her cashier work as a composite job.

(R. 465).

As the Commissioner points out, the POMS explains that a composite job is "[w]ork that required significant elements of two or more occupations and that has no counterpart in the DOT." POMS DI 25001.001(A)(10). POMS DI 25005.020(B) explains "how to determine if work was a composite job and how to consider a composite job at step 4 of sequential evaluation." POMS 25001.001(A)(10). As the parties agree, composite jobs "have significant elements of two or more occupations" and "have no counterpart in the DOT," and Plaintiff's PRW "may be a composite job if it takes

multiple DOT occupations to locate the main duties of the PRW as described by the claimant." POMS DI 25005.020(B).

The determinative issue here is whether the additional duties Plaintiff alleged at the latest disability hearing were main duties of her past relevant work at Don Chilito's. The ALJ found they were not, and as quoted above the decision explained the bases for that finding, and those bases are supported by substantial evidence (such relevant evidence as a reasonable mind might accept as adequate to support a conclusion) in the record. Although the ALJ found that Plaintiff could not perform her PRW at Don Chilito's because it involved more strenuous activities than the usual cashier II position ("lifting 20 pounds frequently," "set up cooking line and filled plates" R. 465), he found that it was not a composite job because it did not include the duties testified at the last disability hearing.

Plaintiff submitted a statement from her employer that "[t]hese are the duties [Plaintiff] performed while working this position" (R. 986), and argues it is evidence demonstrating that the job included duties she testified at the last hearing and that her PRW takes multiple DOT occupations to locate its main duties. The problem with the employer's statement is that, while it lists numerous duties allegedly performed by Plaintiff at Don Chilito's, it does not designate what were the "main duties" of the position, and it does not even suggest she worked as a cashier or mention duties connected with running a cash register, greeting customers, receiving payment, making change, etc. Moreover, Plaintiff last worked at Don Chilito's in July 2010. (R. 161). The employer's statement of job duties dated six and one-half years later in February

2017 and Plaintiff's testimony at the hearing in December 2016, almost six and one-half years later are at best suspect, especially since that evidence is contradicted by Plaintiff's accounts in 2010, 2012, and 2014 which were closer in time to her last work at Don Chilito's. The court finds no error in the ALJ's finding that Plaintiff's past relevant work was not a composite job.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated August 30, 2019, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**
